UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jessica M. R., | Case No. 22-cv-953 (JRT/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff Jessica M. R.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 17) and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("Defendant") Motion for Summary Judgment (Dkt. 19). Plaintiff seeks judicial review of a final determination by the Social Security Administration denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Plaintiff's Motion be granted in part, Defendant's Motion be denied, and that this case be remanded to the Commissioner consistent with this Report and Recommendation.

## I. PROCEDURAL BACKGROUND

On September 24, 2020, Plaintiff filed an application seeking DIB benefits alleging that she became disabled on June 30, 2020, due to rheumatoid arthritis, bladder

issues, history of kidney stones, depression, anxiety, and thyroid issues. (R. 203, 222.)[1]
Plaintiff's application for disability insurance benefits was originally denied and then denied upon reconsideration, and Plaintiff requested a hearing before an administrative law judge. (R. 74, 78, 100, 129-30.)

Administrative Law Judge Sarah Smisek (the "ALJ") held a hearing with Plaintiff, who was represented at the hearing by counsel, on June 23, 2021. (R. 39.) On July 2, 2021, the ALJ issued an unfavorable decision. (R. 34.)

In making this determination, the ALJ followed the five-step sequential evaluation process pursuant to 20 C.F.R. § 404.1520. At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the alleged onset date. (R. 23.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "rheumatoid arthritis and obesity." (R. 24.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CPR Part 404, Subpart P, Appendix 1. (R. 27.)

The ALJ then assessed Plaintiff with the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant's work must allow for the exercise of a sit/stand option, defined as follows: work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. Requires opportunity to change positions approximately every 30 minutes; occasional balancing, stooping, crawling, crouching, kneeling, occasional climbing of ramps/stairs,

---

[1] The Social Security Administrative Record ("R.") is available at Dkt. 15.

2

occasional climbing of ladders ropes and scaffolds, frequent but not constant overhead reaching, handling and fingering.

(R. 27.)

The ALJ concluded, based on the above RFC and the testimony of the vocational expert ("VE"), that Plaintiff could not perform her past relevant work. (R. 32.) The hypothetical provided by the ALJ to the VE was as follows:

> Q Okay. All right. I'd like you to assume a hypothetical individual of the claimant's age and education with that past work. I'd like you to further assume that this individual is limited to sedentary work, would require the exercise of a sit-stand option defined as work that can be done in both the sitting and standing position such that the change in position would not cause the worker to go off task. The worker would require the opportunity to change positions approximately every 30 minutes. There would be occasional postural activities and reaching, and handling and fingering would –could be frequent, but not constant.

(R. 59.)

The ALJ determined based on the above hypothetical and the VE's testimony, that given Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that she could perform, including as a final assembler, DOT#713.687-018, 30,000 SVP 2 sedentary jobs nationally; laminator, DOT#690.685-258, 25,000 SVP 2 sedentary jobs nationally; and inspector, DOT#726.684-110, 30,000 SVP 2 sedentary jobs nationally. (R. 33.)

Accordingly, the ALJ deemed Plaintiff not disabled. (R. 34.) Plaintiff requested review of the decision and the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1-3.)

Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.  RELEVANT RECORD

Ingrid Chan, M.D., was one of Plaintiff's primary care providers during the relevant period. (R. 2273, 2283, 2295.) Dr. Chan had been treating Plaintiff since November 14, 2016. (R. 2248.)

On March 2, 2021, Dr. Chan (in some instances with the input and testing administered by Joseph Chan, PT) filled out a Physical Medical Source Statement for Plaintiff. (R. 2244-48, 2280-81.) Relevant to the appeal at issue, Dr. Chan opined that Plaintiff's maximum ability to stand and walk (with normal breaks) during an 8-hour day, was about 2 hours. (R. 2244.) Dr. Chan also found that Plaintiff's maximum ability to sit (with normal breaks) during an 8-hour day was about 6 hours.[2] (R. 2244.) Dr. Chan went on to opine as follows:

---

[2]  Dr. Chan also opined that Plaintiff had the maximum ability to lift and carry on an occasional basis up to 20 pounds; she did not need to lie down at unpredictable times; she could frequently twist and use repetitive foot controls; she could occasionally stoop, crouch, climb stairs, rotate and flex her neck; that her ability to reach and engage in gross and fine manipulation were affected by her impairment; that her ability to feel and push/pull were not affected by her impairments; and that Plaintiff could frequently engage in gross and fine manipulation. (R. 2244-48.)

4

> 5. **If your patient must periodically alternate sitting, standing or walking to relieve discomfort:**
>
> How long can your patient *sit* before changing position?
>
> 0  5  10  15  20  (30)  45  60  90
> Minutes
>
> How long can your patient *stand* before changing position?
>
> 0  5  10  15  20  (30)  45  60  90
> Minutes
>
> How *often* must your patient *walk around*? Frequency:
>
> 0  5  10  15  20  (30)  45  60  90
> Minutes
>
> How *long* must your patient *walk each time*? Duration:
>
> 0  (5)  10  15  20  30  45  60  90
> Minutes
>
> Does your patient need the opportunity to shift *at will* from sitting or standing/walking?
>
> Yes   (No)

(R. 2245.)

Dr. Chan also asserted that these limitations apply back to at least June 30, 2020.

(R. 2248.)

The ALJ addressed Dr. Chan's opinions as follows:

Ingrid Chan, MD, provided an opinion as to the claimant's ability to perform physical work duties on March 2, 2021 (Ex. 6F/1-5). Dr. Chan opined the claimant would be able to lift and carry 20 pounds occasionally and 10 pounds frequently, [sic] The claimant can stand and walk about two hours in an eight hour day and sit about six hours. The claimant needs to periodically alternate between sitting, standing or walking (to relieve discomfort) after 30 minutes of sitting and 30 minutes of standing. She must walk around 30 minutes for five minutes. The claimant did not need to shift at will from sitting/standing/walking and possibly need to lie down depending on the rheumatoid arthritis. The claimant could frequently twist and use her feet bilaterally for repetitive foot controls. The claimant could occasionally stoop, crouch, climb stairs and ladders, and neck rotate and flex. The claimant could occasionally have her neck in static position. The claimant could frequently handle and finger as it is affected by rheumatoid arthritis but function varies from day to day. Reaching including overhead would be affected. Dr. Chan wrote that the claimant's "RA is not well controlled and she had failed multiple treatment attempts by Rheumatology." (Ex. 6F/1-5). However, in the month before this opinion, Dr. Chan wrote that the claimant would need to work with occupational therapy to determine what her limits were (Ex. 7F/61). As Dr. Chan noted, the claimant had intact gross motor function in the arms and legs and was alert and in no distress (Ex. 7F/61).

5

> Joseph Chan, PT, completed a functional capacity evaluation in March 2021 (Ex. 7F/32). The claimant was able to front carry ten to twenty five pounds fifty feet and thirty pounds forty feet (Ex. 7F/31).
>
> * * *
>
> Mr. Chan completed the paperwork based on the testing and sent it back to Dr. Chan to fill out the remaining areas (Ex. 7F/32). **These opinions have some consistency with the residual functional capacity though the undersigned found a sedentary work level more in line with the claimant's alleged symptoms and the record.** Thus, the limitation to light work is not persuasive. **The time on feet/limits on sitting/need to alternate were adopted into the residual functional capacity in vocationally relevant terms.** The undersigned made no limits in use of foot controls or use of the neck beyond the reaching requirements because the claimant has not shown an issue with using her feet, she remains able to perform daily activities such as driving (which requires both use of the neck and feet), use a computer, read, as well as other activities. The cervical imaging at Exhibit 5F/13 showed only mild changes that were static from prior imaging and treatment of trigger point injections were helpful (Ex. 7F/64). **The occasional limits on postural activities were adopted as well based on this record which shows treatment for body pain.** Finally, this opinion and the functional capacity evaluation findings of Mr. Chan are consistent with the finding that the claimant remains able to perform frequent handling, fingering and feeling but not a restriction to occasional. **Overall, this opinion is partially persuasive.**

(R. 31 (emphasis added).)

### III.   LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error in law. *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018). As defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding.

6

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (marks and citation omitted). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

## IV.   DISCUSSION

Plaintiff's sole argument in her appeal is that the ALJ failed to properly evaluate her treating provider Dr. Chan's opinions in accordance with 20 C.F.R. § 404.1520c, and therefore the RFC improperly did not contain all of her sit, stand, and walk limitations. (Dkt. 18 at 5-10.)

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a 'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v.*

7

*Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Id.* (quoting *Myers*, 721 F.3d at 527). "It is the function of the ALJ to weigh conflicting evidence. We will not reverse merely because evidence also points to an alternate outcome." *Dols v. Saul*, 931 F.3d 741, 749 (8th Cir. 2019) (quotation marks and citations omitted).

The Court considers the ALJ's treatment of Dr. Chan's opinions when determining the RFC. Because Plaintiff's claim was filed after March 27, 2017, the applicable regulation is 20 C.F.R. § 404.1520c. *See Pa M. v. Kijakazi*, No. CV 20-741 (BRT), 2021 WL 3726477, at *6 n.7 (D. Minn. Aug. 23, 2021) ("Since Plaintiff's claim was filed after March 27, 2017, § 404.1527 does not apply because § 404.1520c supersedes any previous statutory requirements.") (citing 20 C.F.R. § 404.1520c). Pursuant to § 404.1520c:

> [An ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources. When a

8

> medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [an ALJ] consider[s] when [the ALJ] evaluate[s] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).

20 C.F.R. § 404.1520c(a). Those factors include "the supportability and consistency of medical opinions and may consider the relationship with the claimant, specialization, and other factors." *Pa M.*, 2021 WL 3726477, at *6 (citations omitted). According the SSA's regulations:

> The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2). As such, an "ALJ must explain how those two factors were considered in determining the persuasiveness of a medical opinion." *Jane D. v. Kijakazi*, No. 20-CV-1278-MJD-KMM, 2021 WL 5360450, at *5 (D. Minn. Oct. 26, 2021), *R. & R. adopted*, 2021 WL 5358569 (D. Minn. Nov. 17, 2021) (citation omitted). The SSA has described supportability and consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

9

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

An "ALJ is not required to explain the remaining factors unless the ALJ 'find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same.'" *Jane D.*, 2021 WL 5360450, at *5 (quoting 20 C.F.R. § 404.1520c(b)(2)-(3)). The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017).

Here, Plaintiff concedes that "the ALJ did comply with 20 C.F.R. § 404.1520c, by explaining the persuasiveness of Dr. Chan's treating source opinions, and explaining which opinions were persuasive and which opinions were not. Nonetheless, the ALJ's decision is not supported by substantial evidence because the ALJ failed to create a residual functional capacity that accurately reflected all of the opinions the ALJ deemed persuasive." (Dkt. 18 at 6.) In particular, Plaintiff asserts that the ALJ inserted into the RFC a requirement that Plaintiff should be allowed to change positions in a manner that will not cause her to go off task, which is contrary to Dr. Chan's opinions. (*Id.*) In addition, Plaintiff claims that the RFC is unclear on the parameters of her total ability to sit, stand, or walk. (*Id.* at 7.) Further, Plaintiff argues that while the ALJ explicitly stated

that Dr. Chan's opinions regarding her ability to sit, stand, and walk, as well as her need to alternate positions, were being adopted into the RFC, there is a material inconsistency between the RFC and Dr. Chan's limitations:

> If the ALJ adopted Dr. Chan's opinions as claimed by the ALJ, [Plaintiff] would not be able to sustain work. If [Plaintiff] began her work day by sitting for 30 minutes, she would then alternate positions to standing or walking for the next 30 minutes. That would make up the first hour of the 8-hour workday. Then [Plaintiff] would alternate positions again to sitting, and after another 30 minutes, alternate to standing and walking again. Thus, after 2 whole hours of work, [Plaintiff] would have sat for a total of 1 hour and would have been standing and/or walking for a total of 1 hour. After 2 more hours of this, [Plaintiff] would have been sitting for a total of 2 hours, well within her 6-hour total. However, [Plaintiff] would have had to stand and/or walk for a total of 2 hours. This was already the maximum amount of time that Dr. Chan opined [Plaintiff] was capable of during an 8-hour workday. Yet, [Plaintiff] would still have 4 more hours of work to go. She could not sit for the remaining 4 hours, as she would need to alternate positions. She could not alternate positions because she had reached her maximum ability to stand and walk. Thus, [Plaintiff] would be incapable of sustaining full-time employment under Dr. Chan's opinions.

(*Id.* at 8-9.) Plaintiff acknowledges that the ALJ was under no obligation to adopt any set of medical opinions, but since the ALJ explicitly states that Dr. Chan's sit, stand, and walk limitations, as well as Dr. Chan's alternating positions opinions, were being adopted, the ALJ had an obligation to explain the reasoning behind why the ALJ omitted some of Dr. Chan's limitations from the RFC. (*Id.* at 9.)

The Commissioner counters that not only did the ALJ restrict Plaintiff to sedentary work and not the more taxing exertional abilities of light work that Dr. Chan opined,[3] but Plaintiff's perceived inconsistency between the ALJ's RFC and Dr. Chan's opinion is due to Plaintiff's incorrect reading of these assessments:

---

3       This appears to be in reference to the weight bearing limitations.

> Plaintiff incorrectly states that Dr. Chan opined that Plaintiff must be able to walk for 30 minutes at a time. *Id.* at 6. However, in the area of the form that asked "how long" Plaintiff should walk, Dr. Chan circled 5 minutes (Tr. 2245). When asked "how often" Plaintiff should walk around, Dr. Chan circled every 30 minutes (Tr. 2245). Thus, Dr. Chan simply noted Plaintiff should walk around for 5 minutes, not walk for 30 minutes as Plaintiff asserts. See Plaintiff's Brief at 7-8. Plaintiff also incorrectly assumes that Dr. Chan required Plaintiff to sit 30 minutes then stand or walk 30 minutes. See Plaintiff's Brief at 8-9.3 But, Dr. Chan did not give an opinion as to "how long" Plaintiff must sit or stand between changing positions; Dr. Chan only opined the "maximum time" Plaintiff "can" sit or stand at one time before changing position (Tr. 2245).

(Dkt. 20 at 5.) Moreover, the Commissioner claims that Plaintiff incorrectly asserts that the ALJ did not incorporate Dr. Chan's limitation that Plaintiff could only stand and walk for a total of 2 hours and sit for a total of 6 hours in an 8-hour workday, as she was assigned to sedentary work, which under the regulations and the Commissioner's Social Security Rulings ("SSR") incorporates such a limitation. (*Id.* at 6 (citing 20 C.F.R. § 404.1567(a); SSR 83-10).)

In her reply, Plaintiff argues that the RFC does not allow her to sit for her maximum amount of time as opined by Dr. Chan (30 minutes), stand or walk for a minute (or any time less than 30 minutes), and then sit down, as this would be 2 position changes within 30 minutes. (Dkt. 21 at 3.) In other words, it is her position that the RFC cannot be supported by substantial evidence because she would need to be able to alternate positions more frequently than the RFC allows to satisfy the sedentary RFC and Dr. Chan's requirement of 6 hours of sitting and 2 hours of standing or walking. (*Id.*)

12

Plaintiff further contends that the RFC only allows for the opportunity to change positions every 30 minutes, which does not reflect her limitations under Dr. Chan's opinion that she must change positions at least every 30 minutes because that is the maximum amount of time she can sit, stand, or walk. (*Id.*) According to Plaintiff, this is a material difference because under the current RFC, Plaintiff could sit for longer than 30 minutes. (*Id.* at 3-4.)

Additionally, Plaintiff claims she could be declined the opportunity to change positions if it put her off task under the present RFC. (*Id.* at 4.) Moreover, Plaintiff asserts that the RFC completely omits Dr. Chan's opinion that she must walk for 5 minutes every 30 minutes. (*Id.*)

For the purposes of analysis, the Court restates the RFC set forth by the ALJ for Plaintiff in relevant part:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant's work must allow for the exercise of a sit/stand option, defined as follows: work that can be done in both the sitting and standing positions, such that the change in position will not cause the worker to go off task. Requires opportunity to change positions approximately every 30 minutes. . . .

(R. 27.)

By way of ease of comparison, Dr. Chan's relevant opinions (already included above) were that Plaintiff's maximum ability to sit (with normal breaks) during an 8-hour day was about 6 hours, that her maximum ability to stand and walk during an 8-hour day was about 2 hours, and further opined as follows:

13



(R. 2244-45.)

First, the Court finds without merit Plaintiff's argument that the ALJ's RFC is unclear on the parameters of her total ability to sit, stand, or walk. The RFC explicitly incorporates a sedentary level of work under the 20 CFR § 404.1567(a), except as otherwise qualified in the RFC. Under the regulations, "sedentary" work is defined as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required **occasionally** and other sedentary criteria are met.

20 CFR § 404.1567(a) (emphasis added). While § 404.1567 does not define "occasionally," SSR 83-10 defines "occasionally" in the context of a sedentary RFC:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, **periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally**

14

> **total approximately 6 hours of an 8-hour workday**. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. 1983) (hereinafter "SSR 83-10") (emphasis added). SSRs "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). The SSRs "represent precedent final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." *Id.* As such, incorporated into Plaintiff's sedentary RFC is that periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. *See B.-I. v. Kijakazi*, No. 21-CV-0238 (ECT/JFD), 2022 WL 1423595, at *5 (D. Minn. Apr. 19, 2022) ("Although there is no requirement that an ALJ cite to Social Security Rulings in his or her written decision, the ALJ's decision must be based upon application of the correct legal standard and supported by substantial evidence in the record.") (cleaned up), *R. & R. adopted sub nom.*, 2022 WL 1423313 (D. Minn. May 5, 2022). As such, the Court concludes that the sedentary RFC's sit/stand requirement, which inherently incorporates SSR 83-10, is consistent with Dr. Chan's opinion that Plaintiff could stand or walk for 2 hours and sit for six hours out of an 8-hour workday.

The Court also rejects any argument by Plaintiff that Dr. Chan's opinion requires her to stand or walk for 30 minutes after changing her position from a sitting position, leading to a standing requirement of more than 2 hours. Dr. Chan only stated that Plaintiff must change position from sitting or standing every 30 minutes; she did not

require Plaintiff to retain such a position for 30 minutes. This is supported by the fact that Dr. Chan only singled out walking with a required duration of 5 minutes. Moreover, such an interpretation of Dr. Chan's alternating positions opinions would render her opinion that Plaintiff could sit for 6 hours and stand 2 hours in an 8-hour working day meaningless.[4] In her reply, Plaintiff appears to concede that this is not her position and instead asserts as follows:

> However, the Commissioner incorrectly contended that we assumed Dr. Chan required plaintiff to sit then stand or walk for 30 minutes. *Id.* Dr. Chan's opinion did not require this, but the ALJ's RFC required that [Plaintiff] hold a position for 30 minutes because it only gave her the "opportunity to change positions every 30 minutes." Tr. 27. This means if [Plaintiff] holds one position for 30 minutes she may change positions, but then cannot change positions again for another 30 minutes. Thus, if she was sitting and stood up this would be a position change and she would not be able to change positions again (eg. Sit down) until 30 minutes had passed under the ALJ's RFC. The RFC does not allow for [Plaintiff] to sit for her maximum amount of time as opined by Dr. Chan (30 minutes), stand or walk for a minute (or any time less than 30 minutes), and then sit down as this would be two position changes within 30 minutes.

(Dkt. 21 at 3.) Again, the explicit plain language of Dr. Chan's opinion only provides that Plaintiff must change position from sitting or standing every 30 minutes and not the required duration of such a position. However, the RFC "[r]equires [the] opportunity [for Plaintiff] to change positions approximately every 30 minutes." (R. 27.) This

---

[4]     The Court notes that Plaintiff also argues that the RFC does not reflect Dr. Chan's opinion that Plaintiff's maximum ability to stay in one position is 30 minutes, as the RFC only allows for the opportunity to change positions every 30 minutes, which allegedly does not reflect her limitation that she must change positions at least every 30 minutes because that is the maximum amount of time she can sit, stand, or walk. (Dkt. 21 at 3-4.) However, it is unclear to this Court how this is a material difference. If a party must change position every 30 minutes, they cannot sit for more than or stand for more than 30 minutes at a time.

16

requirement is vague and can result in two outcomes: one where Plaintiff is permitted to change positions every 30 minutes or less and another where Plaintiff can only change positions every 30 minutes. If the latter is followed, along with the limitations in maximum duration that Plaintiff can hold a position under Dr. Chan's opinions, Plaintiff would be required to switch positions every 30 minutes between sitting and standing/walking, which would result in at least 4 hours of standing/walking during an 8-hour workday. This would exceed the amount of standing allowed by the sedentary RFC imposed by the ALJ.

In addition, the RFC inexplicably limits any ability by Plaintiff to walk for 5 minutes between position changes, as required by Dr. Chan. Indeed, the RFC appears to prohibit this because it requires that "the change in position will not cause the worker to go off task." (R. 27.) The Commissioner does not even address this apparent conflict in its opposition, that is, how walking for 5 minutes after every position change would not take Plaintiff off task, especially in light of the final assembler, laminator, and inspector jobs put forth by the VE based on the AJL's RFC hypothetical. It is important to reiterate that outside of the weight carrying limitation, the Commissioner concedes that the ALJ found Dr. Chan's opinions to be persuasive. (Dkt. 20 at 5.) When an ALJ finds a medical opinion to be persuasive, but offers no explanation for her failure to incorporate those limitation into the RFC and the resulting hypothetical to the VE, such error is outcome-determinative and remand is appropriate. *See Kenneth J.V. v. Kijakazi*, No. 22-CV-373 (KMM/DJF), 2023 WL 2388696, at *1 (D. Minn. Mar. 7, 2023). Indeed, the ALJ may only rely on the testimony of a VE if the hypothetical question posed to the VE

adequately reflects the claimant's limitations. *See Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). A hypothetical to a VE must "set[ ] forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citation omitted). Where a hypothetical does not precisely set out all the claimant's impairments, the question is defective and the VE's response is not substantial evidence of the ability of the claimant to work. *See O'Leary v. Schweiker*, 710 F.2d 1334, 1343 (8th Cir. 1983) (citation omitted).

As such, the Court remands this matter back to the agency so that the ALJ can provide clarity regarding the RFC's requirement that Plaintiff have the "opportunity to change positions approximately every 30 minutes" given that it creates the possibility to make the sedentary RFC (with a 2-hour standing limit) assigned by the ALJ unfeasible. (R. 27.) In addition, the ALJ will need to address why she did not include the 5 minutes of walking for each position change assigned by Dr. Chan and how this affects the RFC limitation that a change in position cannot take Plaintiff off task.

To the extent necessary, the ALJ shall formulate a new RFC and provide a new hypothetical to the VE to determine whether there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff Jessica M. R.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 17) be **GRANTED** in part;

2. Defendant Acting Commissioner of Social Security Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 19) be **DENIED**; and

3. This case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

DATED: April 28, 2023         *s/Elizabeth Cowan Wright*
                              ELIZABETH COWAN WRIGHT
                              United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).